UNITED OF OMAHA LIFE
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

REX ROTO CORPORATION,
Defendant–Appellee.

No. 96–1640.

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1997.

Decided Sept. 19, 1997.

James E. Brenner (argued and briefed), Clark, Hill P.L.C, Detroit, MI, for Appellant. Mark W. McInerney (briefed), Clark, Hill P.L.C, Detroit, MI, for Appellant.

I.W. Winsten (argued), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Appellee. Robert A. Fineman (briefed), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Appellee. .

Rita M. Theisen (briefed), Leboeuf, Lamb, Greene & Macrae, Washington, DC, for Amicus Curiae.

Before: NELSON and BOGGS, Circuit Judges; WEBER, District Judge.[*]

## OPINION

DAVID A. NELSON, Circuit Judge.

This is a diversity case that presents the following question: Where a life insurance company has issued a policy for which it would have charged a substantially higher premium had it been aware of an intentionally misrepresented medical condition, would knowledge of the facts misrepresented "have led to a refusal by the insurer to make the contract," within the meaning of these words as used in Michigan's insurance code? If the question is answered "yes," as we believe it should be, the misrepresentation bars recovery on the policy.

## I

The plaintiff, United of Omaha Life Insurance Company, specializes in insuring "impaired risks," i.e., persons with health problems that prevent them from obtaining life insurance coverage at standard rates. The defendant, Rex Roto Corporation, is a manufacturing concern that had one million dollars' worth of "key man" insurance, initially written by another insurer, on the life of its chairman, John P. Rex.

Sometime in the spring of 1993, it appears, Rex Roto contacted an independent insurance agent for help in obtaining a policy at a lower premium rate than the company had

been paying. The agent sent Professional Life Underwriters a "trial application" disclosing that in August of 1984 Mr. Rex had undergone a heart by-pass operation. The trial application was forwarded to a United of Omaha underwriter. After consulting with United of Omaha's senior medical director of underwriting, the underwriter decided to make a conditional offer of coverage. The offer was subject to a formal application process that would include a medical examination and the submission of Mr. Rex's medical records.

On May 24, 1993, a formal application was tendered to United of Omaha through Professional Life Underwriters. Mr. Rex stated in the application that with the exception of treatment for his heart condition, the only medical treatment he had received in the last five years had consisted of routine physical examinations. Mr. Rex signed and dated the application directly below a printed declaration that read as follows: "All answers in this application: (a) are true and complete to the best of my knowledge and belief, (b) will be relied on to determine insurability and (c) which are incorrect or misleading, may void the application effective the issue date."

Mr. Rex did not disclose the entirety of his recent medical history. The treatment notes of his personal physician—notes that were not provided to United of Omaha—show that during a medical examination on June 4, 1992, Mr. Rex was diagnosed as having an abdominal aortic aneurysm. This diagnosis was confirmed by an ultrasound examination conducted on October 21, 1992. The aneurysm was determined to be 4.5 centimeters at its greatest dimension. In a follow-up ultrasound examination on April 14, 1993, the aneurysm was measured at 4.6 centimeters.

It is undisputed that United of Omaha was not aware of the aneurysm when it offered to insure Mr. Rex's life. Acting under a misapprehension as to the medical facts, United of Omaha proposed to write a $1 million policy at a premium that reflected the risk associated with the heart condition but did not re-

[*] The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

flect any additional risk associated with the aneurysm. Such a policy was issued on June 23, 1993.

In deciding to issue a policy at the premium in question, United of Omaha used an underwriting manual called the "Cologne Life Reinsurance Company Life Underwriting Manual." This manual specifically addresses the topic of abdominal aortic abnormalities, including aneurysms. The pertinent language of the manual is as follows:

"Abdominal Aortic Aneurysm
 Without operation
  (Should be well followed, including
  abdominal ultrasound examinations)
   No symptoms (evaluate KFT's if
   above or involving renal arteries)

 . . .

    Size 4–6 cm
     0  1 yr.............PP
     Thereafter..........+ 200 up
    Size > 6 cm...........RNA."

Translated into English, this means that if the applicant for insurance has an abdominal aortic aneurysm of between four and six centimeters in size, the insurance company should wait twelve months from the date of diagnosis to determine whether the aneurysm is stable. Thereafter, if the aneurysm proves to be stable, the manual recommends offering insurance at a premium at least 200 percent of that which would otherwise be required.

As noted above, Mr. Rex's abdominal aortic aneurysm was diagnosed on June 4, 1992. The formal application was tendered to United of Omaha on May 24, 1993, which was more than 11 months but less than 12 months after the original diagnosis. The policy itself was issued more than one year after the diagnosis.

Mr. Rex died on April 24, 1994, ten months after issuance of the policy. He was 67 years old. The primary cause of death was said to be a stroke, with heart disease and an abdominal aortic aneurysm listed as contributing factors.

Rex Roto promptly submitted a claim for death benefits under the insurance policy. Because Mr. Rex had died within Michigan's two-year contestability period, United of Omaha undertook an investigation of Mr. Rex's medical history before making payment. The investigation produced evidence of the previously undisclosed aneurysm.

United of Omaha then brought the present action in federal district court, seeking a declaration that the policy was void because of the misrepresentation. Rex Roto counterclaimed for the proceeds of the policy. On a motion by United of Omaha for summary judgment, the district court determined that Mr. Rex had in fact misrepresented his medical condition. (This finding is not contested on appeal.) The materiality of the misrepresentation was reserved for trial.

After conducting a three-day bench trial, the district court entered final judgment in favor of Rex Roto. United of Omaha was ordered to pay $1 million plus interest. This appeal followed.

## II

Under Michigan law, which the parties agree is applicable here, an insurer who seeks to have a policy voided on the basis of misrepresentation must prove (1) that a misrepresentation was in fact made, (2) that the insurer relied on it, and (3) that the misrepresentation was material to the risk the insurer accepted. *Auto–Owners Ins. Co. v. Michigan Comm'r of Ins.*, 141 Mich. App. 776, 781 n. 3, 369 N.W.2d 896, 899 n. 3 (1985) (citing *Howard v. Golden State Mut. Life Ins. Co.*, 60 Mich.App. 469, 477, 231 N.W.2d 655, 659 (1975)).

In this connection, Mich. Comp. Laws § 500.2218 provides in pertinent part as follows:

"The falsity of any statement in the application for any disability insurance policy . . . may not bar the right to recovery thereunder unless such false statement *materially affected either the acceptance of the risk or the hazard assumed by the insurer.*

(1) Material misrepresentation; refusal to insure. No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. *No misrepresentation shall be deemed material unless knowledge*

*by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.*" (Emphasis supplied.)

The Michigan Supreme Court has held § 500.2218 applicable to life insurance policies as well as disability policies. See *Wickersham v. John Hancock Mutual Life Ins. Co.*, 413 Mich. 57, 318 N.W.2d 456 (1982).

In the case at bar the district court found as a fact that if United of Omaha had known all the relevant facts concerning Mr. Rex's medical condition, the company would have "offer[ed] Mr. Rex coverage at 200% above premium in May of 1993." This finding is not clearly erroneous.

As a matter of law, the district court concluded that "[w]hether or not United [of Omaha] would have charged a higher premium for the policy is not relevant on the issue of materiality...." This conclusion, in our opinion, was erroneous.

In *Keys v. Pace*, 358 Mich. 74, 99 N.W.2d 547 (1959), the Michigan Supreme Court explained that

"[t]he generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk *or the charging of an increased premium.*" *Id.* at 82, 99 N.W.2d at 551 (citation and internal quotation marks omitted) (emphasis supplied).

And under Mich. Comp. Laws § 500.2218(1), as we have seen, "[n]o misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract."

The Supreme Court did not have occasion to interpret Mich. Comp. Laws § 500.2218(1) in *Keys*, this section not having been enacted until after the events at issue there. For obvious reasons, however, the analysis of ma-

teriality in *Keys* is instructive in the case at bar. When an insurer sets a premium rate on the basis of representations made in an insurance application, the rate will be a direct reflection of the degree of risk the representations have led the insurer to believe it is assuming. If disclosure of information that has been wrongfully withheld in the insurance application would have resulted in a higher premium, the information would appear to have a material effect on what § 500.2218 calls "the acceptance of the risk or the hazard assumed by the insurer." And for reasons to which we shall turn shortly, we believe that the test set forth in the final sentence of the statute is satisfied by the *Keys* hypothesis as well.

Notwithstanding the Supreme Court's decision in *Keys*, an intermediate Michigan court has concluded that whether the amount of the premium is affected by a misrepresentation in an insurance application has nothing to do with the materiality of the misrepresentation. In *Zulcosky v. Farm Bureau Life Ins. Co. of Mich.*, 206 Mich.App. 95, 520 N.W.2d 366 (1994), the Michigan Court of Appeals stated that

"regarding the question of 'materiality,' the courts of this state have not focused on whether the insurer would have been entitled to charge an increased premium but for the misrepresentation. Instead, the inquiry has been limited to whether the insurer would have rejected the application altogether had the true facts been known. In drafting § 2218(1), the Legislature specifically defined 'material' misrepresentations as those misrepresentations that, if known, would have led to a refusal by the insurer to make *the* contract." *Id.* at 99–100, 520 N.W.2d at 368–69 (citing *Wickersham*, 413 Mich. at 61–2, 318 N.W.2d at 458; *Clark v. John Hancock Mutual Life Ins. Co.*, 180 Mich.App. 695, 699–700, 447 N.W.2d 783, 785 (1989)) (emphasis supplied).

The *Zulcosky* court appears to have believed that the price term of an insurance contract is not a material part of the agreement. Accordingly, *Zulcosky* teaches, a refusal to issue a policy unless the purchaser pays a

higher premium is not a refusal to make "the" contract.

In determining a question of Michigan law, this court is bound by decisions of the state's intermediate appellate courts unless convinced that the Michigan Supreme Court would decide the question differently. See, *e.g.*, *Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 141 n. 15 (6th Cir.1983). As to the question presented here, our view is that the Michigan Supreme Court would not follow *Zulcosky*. We agree with *Kaji v. Prudential Ins. Co. of America*, 1996 WL 426535 (E.D.Mich. January 31, 1996), where a federal district court in Michigan concluded that the Supreme Court would reject *Zulcosky*'s narrow test of materiality in favor of the broader *Keys* test.

Unlike the *Zulcosky* court, we see no tension between the definition of materiality in Mich. Comp. Laws § 500.2218(1) and the "increased premium" test adopted in *Keys*. The amount of the premium to be paid is an essential term of a Michigan insurance contract. See *GRP, Ltd. v. United States Aviation Underwriters, Inc.*, 402 Mich. 107, 112–13, 261 N.W.2d 707, 709–10 (1978) (citing *Martin v. Lincoln Mut. Casualty Co.*, 285 Mich. 646, 650, 281 N.W. 390, 391 (1938)). An insurance contract in which the insurer's obligation is conditioned on payment of a $25,000 premium is obviously not the same contract as one in which the insurer's obligation is conditioned on payment of a $50,000 premium. And when Mich. Comp. Laws § 500.2218(1) says that a misrepresentation is immaterial unless disclosure of the truth would have led the insurer to refuse to make "the" contract, we do not read the statute as saying that willingness to make a different contract renders the misrepresentation immaterial.

United of Omaha would not have agreed to insure Mr. Rex's life at the stipulated premium had Rex not submitted a falsified insurance application. If the company had known of Mr. Rex's aneurysm, it would have insisted on doubling the premium in order to offset the additional risk. The insurance contract actually entered into by the parties thus differed substantially from the contract the insurance company would have been will-

ing to make if the aneurism had been disclosed. It is clear, as we see it, that disclosure of the facts withheld in the application "would have led to a refusal by [United of Omaha] to make the contract"—for there is clearly no way United of Omaha would have made the particular contract it did make, with the particular price term contained therein, if the insurance company had been told what it should have been told.

The judgment appealed from is **REVERSED,** and the case is **REMANDED** with instructions to enter a judgment declaring that upon the return of the premium to Rex Roto, United of Omaha will be relieved of any obligation to pay death benefits under the policy.