NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0178n.06
Filed: March 8, 2005

No. 03-2396

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ZION CHRISTIAN CHURCH, a Michigan Non-Profit Corp., PASTOR LEONARD GARDNER, JIM BLANKENSHIP, PASTOR DAVID GARDNER, PASTOR DON GARDNER, RUSSELL STEHLE, ROY ROGERS & CHARLES PRECOURT, | ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Plaintiffs-Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| BROTHERHOOD MUTUAL INSURANCE COMPANY, an Indiana Insurance Corporation, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | |

Before:  GUY and ROGERS, Circuit Judges; and DOWD, Senior District Judge.[*]

**DOWD, J.**   This is an appeal from an order of the district court granting the defendant/appellee's motion for summary judgment and denying plaintiffs/appellants' motion for partial summary judgment.  For the reasons discussed below, we **AFFIRM**.

**I.**

---

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Zion Christian Church ("Zion") is a nonprofit corporation located in Troy, Michigan. Leonard Gardner ("Pastor Leonard") is founder and Senior Pastor of Zion. His sons, David and Donald Gardner (hereafter, "Pastor David" and "Pastor Don" ), were also ministers at the church.[1]

On October 1, 1998, Brotherhood Mutual Insurance Company ("BMIC") issued a combination policy of insurance to Zion, providing coverage in the areas of general liability, personal injury liability, sexual acts liability, sexual harassment liability, directors and officers liability, employment practices liability, workers compensation, and excess liability.

Zion had specifically requested an additional Sexual Acts Liability Coverage endorsement. To get that coverage, Zion was required to complete a separate application disclosing, *inter alia*, its knowledge of prior situations involving sexual abuse or misconduct, or allegations of the same. This was to enable evaluation of the risk of supplying the additional coverage. The application for insurance was completed by Daniel West, Zion's director of business administration, on September 25, 1998. It is undisputed that he got all the information for the application from Pastor Leonard.

There were several questions on the application designed to help BMIC assess its potential risk if it were to issue the coverage. For example, the application asked:

-- Has your organization ever had an allegation or lawsuit filed against you alleging any type of sexual abuse or misconduct? . . .

-- Are you aware of any past or present situation in your ministry that could produce an allegation or lawsuit claiming any type of sexual abuse or misconduct? . . .

---

[1] A third son who was a minister at the church does not appear to have been involved in this litigation.

-- Are you aware of any current employee or ministry volunteer who has previously been accused, charged, or convicted of any type of sexual abuse or sexual misconduct? . . .

Please describe circumstances of any employee or ministry volunteer who has previously participated in, or been accused, charged, or convicted of, any type of sexual abuse or sexual misconduct. Please do not identify any individuals by name in this explanation . . .

CMP application fraud warning applies.

R. 35, Ex. 2.[2]

After consulting with Pastor Leonard, Daniel West gave a negative answer to each of the questions. On October 1, 1998, BMIC issued the policy of insurance, including the additional coverage for sexual acts liability. BMIC states in this lawsuit that it would not have taken that risk had it known what Zion knew.

Eventually, two lawsuits were filed against Zion and several of its employees, including Pastor Leonard. The first was a lawsuit filed on November 13, 2001 by Daniel West, the former

---

[2] The "fraud warning" referred to in the final paragraph was contained in the commercial liability policy. It stated:

We do not provide coverage for an insured who has:

    a.    willfully concealed or misrepresented:
        1) a material fact or circumstance with respect to this insurance; or

        2) an insured's interest herein.

    b.    engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

R.11, Ex. 11.

business administrator, alleging counts of retaliation in violation of Michigan's Civil Rights Act, breach of contract, defamation and slander, and tortious interference with a business relationship.[3] This lawsuit was eventually settled and is not an issue here.

The second suit, also filed on November 13, 2001,[4] was brought by Alisa Tiano, a former Zion employee, against Zion, Pastor Leonard and Pastor Don. She alleged counts of sexual harassment and quid pro quo sexual harassment, asserting that Pastor Don had made several inappropriate sexual advances beginning in 1998 and continuing into 2000. She claims to have provided notice to the church and Pastor Leonard in July 2000, to no avail. In her view, her resignation was really a constructive discharge.

Both West and Tiano told Zion of their intent to sue prior to filing their lawsuits. Zion presented claims to BMIC seeking defense and, if necessary, indemnity. On October 31, 2001, in a very lengthy letter, BMIC denied coverage and refused to defend any action filed by Tiano.[5] BMIC did acknowledge potential for up to $25,000 in defense costs for any allegation of personal

---

[3] West contended that, in July 2000, he discovered that Pastor David was using Zion computers to view, download and transmit pornographic materials. He relayed this information to Pastor Leonard who said he would take care of the issue. West also alleged that at least two female parishioners complained to him about inappropriate sexual advances by Pastor Don. This information was also relayed to Pastor Leonard who, again, said he would handle it. In August 2000, the pastors suddenly began to complain of tardiness by West and he was issued a warning letter. Then, in December 2000, he was given a new position of Director of New Construction and Special Assignments, allegedly due to his tardiness. His employment was finally terminated in February 2001.

[4] The two lawsuits were filed by the same law firm.

[5] BMIC acknowledged that there was potential for coverage for some of West's allegations under the employment practices liability endorsement to the policy. Since the West lawsuit is not at issue here, there is no need to discuss this coverage.

4

injury or emotional injury sustained by Tiano under a separate endorsement covering defense costs for a "covered lawsuit." After the lawsuits were actually filed, BMIC restated this very same position on November 29, 2001.

On June 12, 2002, this declaratory judgment action was filed by Zion, Pastor Leonard, Pastor Don, and several others.[6] Eventually, cross-motions for summary judgment were filed. On September 24, 2003, the district court denied plaintiffs' motion and granted defendant's motion. On October 16, 2003, the notice of appeal was filed.

## II

### A

This court reviews *de novo* an order of summary judgment, applying the same principles that the district court is required to apply. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A court must consider "[o]nly disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Non-material facts will not be considered. Neither should a court attempt to weigh the material evidence or determine its truth. *Liberty Lobby*, 477 U.S. at 249. The judge's sole function will be to determine

---

[6] Two days before issuing the summary judgment ruling now on appeal, the district court issued a separate stipulated order dismissing all but defendants Zion, Pastor Leonard and Pastor Don. This ruling does not appear to be challenged here.

5

whether there is a genuine issue for trial such that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citations omitted).

Where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 252).

Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

**B**

**1**

Appellants assert that the district court erroneously granted summary judgment in favor of the defendant/appellee because there were material factual disputes relating to the question of fraud in the application process.

Under Michigan law, the general rule is that "[w]here a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud, an insurer may rescind an insurance policy and declare it void *ab initio*." *Hammoud v Metropolitan Property & Cas Ins Co*, 563 N.W.2d 716, 718 (Mich. App. 1997). A

misrepresentation or concealment is material if the insurer would not have issued the insurance

coverage in the absence of the misrepresentation or concealment. *Keys v. Pace*, 99 N.W.2d 547,

551-52 (Mich. 1959).

BMIC argues that the entire insurance contract was void and unenforceable due to fraud on

Zion's part at the time it applied for the policy. If that is so, it would be dispositive of the entire

case. While fraud would ordinarily be a question of fact for the jury and not amenable to decision

on summary judgment, the district judge concluded, based on the record before him, as follows:

> In this case, Zion executed an application for sexual acts coverage in
> September 1998 in which it denied ever having had "an allegation or lawsuit filed
> against you alleging any type of sexual abuse or misconduct," denied being aware
> of any Church employee "who has been previously accused . . . of any type of sexual
> abuse or sexual misconduct," and denied being "aware of any past or present
> situation in [the] ministry that could produce an allegation or lawsuit claiming any
> type of sexual abuse or misconduct."

> In fact, Zion and Pastor Leonard Gardner were sued in 1992 by a former
> parishioner in which the plaintiff and a number of witnesses specifically alleged
> sexual misconduct by Pastor David Gardner. Furthermore, Pastor Leonard admitted
> in his deposition that David was accused of sexual molestation 16 years ago and that
> incident was "common knowledge" among his church members. *See* Defendant's
> Ex. 3, pp. 47-49. Leonard further admitted having knowledge of his other son,
> Pastor Donald Gardner's extramarital sexual acts for at least four or five years. *Id*.
> pp. 29-31. *See also*, Transcript of Special Elders and Deacons Meeting, Defendant's
> Ex. 6, p. 2.

R. 47 at 18-19.

The district judge's references to Pastor Leonard's knowledge are accurate. First, BMIC

produced a copy of a complaint filed in 1992, prior to completion of the insurance application,

wherein a former employee, Rosemary Henderson, sued Zion and Pastor Leonard on behalf of

herself and her deceased husband's estate. The complaint alleged wrongful discharge and

intentional infliction of emotional distress based, in part, on allegations that the Church and Pastor Leonard

> engaged in a campaign to drive the Plaintiff's decedent and Plaintiff Rosemary Henderson from Zion employment and church membership solely because of the opposition of Rosemary Henderson to the nature in which the allegations of marital infidelity against the Defendant Gardner, and allegations of sexual misconduct with Zion Christian School students by the son of the Defendant Gardner were addressed and handled by the Defendants.

R. 35, Ex. 4, ¶ 21e. In the context of this *Henderson* action, affidavits were filed by two former Zion associate pastors, a former member of the Church's Board of Trustees, and former Zion ministers and school teachers, each alleging that Pastor David had engaged in sexual intercourse with various minor female students, yet remained an ordained minister gainfully employed by Zion.

The two citations at the end of the quote from the district judge's opinion above refer to transcripts submitted by BMIC in support of its motion for summary judgment.

The first is the transcript of the deposition of Pastor Leonard taken on August 24, 2001. In questioning about what motivated Daniel West to come to Pastor Leonard in 2000 with a concern that he may not have given truthful information in the insurance application, Pastor Leonard testified as follows:

Q. Was there anything else that he expressed to you as far as why he now believed his answers to be inaccurate?

A. The only other thing I believe that he may have mentioned was the sixteen-years-ago incident.

Q. Now, how did he know about that?

> A.    Well, his family was members of the church at the time, they were here for some twenty-four years: **It was common knowledge, his family knew that.**

R.11, Ex. 3, at 47 (emphasis added).  The matter about which there was "common knowledge" was that Pastor David, while an athletic director at Zion Church's school, had been involved sexually with a minor.

The district judge's second citation was reference to the transcript of a meeting conducted with the Elders and Deacons of the church on May 23, 2001.  It reveals that, in 1998 when the insurance application was completed, Pastor Leonard already knew of his son Donald's sexual improprieties.  At that meeting, Pastor Leonard told the church leaders the following:

> . . . Uh, **about four or five years ago**, uh, Don did get involved in some sexual impropriety, uh, and uh, **I thought at that time**, that every, all the indication was that it was completely handled and it was taken care of and so we moved on. Last August, uh, it manifested again, that is that very situation of the four or five years ago appeared again, and it was obvious that it hadn't, it hadn't been completely taken of.  So when it, when it appeared, uh, Don stepped down from pastoral duty. You may remember that he stepped down and we put Ryan in, in as Pastor.  He went south, submitted himself to several ministers in Tulsa and in Dallas, and has been in counseling, uh, uh, for some number of weeks after that time, and, uh, then in December after, uh, uh, the divorce went through between he and Dawn, he resigned altogether rather than just stepping down.  He resigned from the ministry.  So at this particular point, I want to make it clear to all of you that both Dave and Don have resigned from the ministry.  They're not, uh, they're not ministers any more here at Zion. . . .

R. 11, Ex. 2, at 2 (emphases added).

There was an abundance of facts in the record before the district court to show that, in 1998 when the application for insurance was completed by West using information supplied by Pastor Leonard, it was well-known that there were many claims of sexual improprieties by Zion's

9

employees that should have been, but were not, disclosed. The insurer also filed an affidavit stating that it would never have granted coverage for sexual acts liability had it known this history.

Appellants argue here that the burden of proof on this issue of fraud in the application process should have been "clear and convincing" evidence, whereas there was no more than a "preponderance" of evidence in the record. The district judge did not actually identify what standard of proof he applied and Michigan case law is not crystal clear on what constitutes the proper quantum of proof. However, we conclude that where, as here, fraud is being raised as a *defense* to a claim of insurance coverage, preponderance is the proper standard. *See Allstate Ins. Co. v. Maroki*, No. 230051, 2002 WL 31117182, at * 1-2 (Mich.App. 2002) (citing *Mina v. General Star Indemnity Co.,* 555 N.W.2d 1 (Mich App. 1996), *rev'd in part on other grounds*, 455 Mich. 866 (1997); *Campbell v. Great Lakes Ins Co,* 200 N.W. 457 (Mich. 1924)).[7]

The district judge made no credibility determinations. From Pastor Leonard's own deposition testimony it is clear that, at the time he applied for the insurance, he knew of information that should have been disclosed to BMIC and he knew that he was required to disclose it. Instead, he chose to parse the language of the questions in an attempt to avoid disclosure in a way that was downright dishonest.

---

[7] At the hearing on the cross-motions for summary judgment, the district court declared that Zion's arguments defending its answers to the insurance application questions were "a lot of baloney." R.53 at 12. Zion was, indeed, splitting hairs; for example, it claimed that, notwithstanding the *Henderson* lawsuit, its answer in the negative to the question about whether Zion had ever had an allegation or a lawsuit against it alleging any type of sexual abuse or sexual misconduct was *truthful* because Henderson had sued for wrongful discharge and infliction of emotional distress not sexual harassment. The district judge retorted: "You know, this is a Bill Clinton kind of construction of language that is so clear on its face that I find it offensive that you are actually arguing it." *Id*.

(*Case No. 03-2396*)

We find no error in the district court's conclusion that, because of "Zion's misrepresentations and concealment in its insurance application [which were] material to [BMIC's] decision to issue Sexual Acts Liability Coverage[,] . . . the Sexual Acts Liability Coverage is void." R.47 at 19-20.

**2**

Zion argues that, even if this court concludes that fraud invalidates the Sexual Acts Liability Coverage endorsement, it would not invalidate the entire insurance contract and, under the general liability provisions of the contract, BMIC owed not only coverage but also a duty to defend the *Tiano* lawsuit. With respect to this argument, the district court concluded that the unambiguous exclusions in the policy established that Zion was entitled to neither coverage nor defense with respect to the *Tiano* lawsuit.

We agree with the district court that Zion's argument has no merit. The Commercial General Liability policy stated clearly that it did not apply to "loss of any kind arising directly or indirectly out of any actual or alleged sexual act. . . ." R. 11, Ex. 7, p.5, ¶ 14. The policy defines "sexual act" to include:

a. any act which would be considered a criminal act under any applicable federal, state or local statute, ordinance or law relating to sexual offenses;

b. any act or attempted touching of a person by another person for the purpose of obtaining sexual arousal or sexual gratification;

c. any other act undertaken by a person for the purpose of obtaining sexual arousal or sexual gratification;

d. any conduct characterized or interpreted as sexual intimidation or sexual harassment, or as intimidation or harassment based on gender difference; or

11

(*Case No. 03-2396*)

> e.      any conduct characterized or interpreted as being sexual in nature.
>
> Any of the above acts or conduct will be considered a single sexual act if undertaken by the same perpetrator or perpetrators, even if such acts are directed against more than one person, happen over time, or take place during more than one policy period.

*Id*. at p.3.

Tiano's lawsuit involved a "sexual act" as defined by the policy. Therefore, there was no coverage and, as a result, no duty to defend. This court has stated that "[w]hen 'an insurer has specifically and explicitly excluded coverage with unambiguous policy language, the express exclusions will free the insurer from any duty to defend.'" *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 455 (6th Cir. 2003) (quoting *Am. Cas. Co. of Reading, Pa. v. Rahn*, 854 F.Supp. 492, 504 (W.D. Mich. 1994)).

Zion argues that Pastor Don's defense in the *Tiano* suit was that any sexual acts were consensual, without intent to injure Tiano, and that any unwitting injury or harm was, therefore, an "accident." On this theory, Zion argues, there was a duty to defend.

This argument also lacks merit because the exclusions of the policy are broad, making no mention of whether the excluded sexual acts are consensual or non-consensual. Loss resulting from sexual acts is simply not covered. For coverage of such loss, an insured must separately purchase the Sexual Acts Liability Coverage endorsement.

Of course, Zion did purchase that endorsement, albeit fraudulently, leading us to declare the endorsement void. However, even if we had not declared the Sexual Acts Liability Coverage endorsement void, that endorsement would not supply any relief for Zion with respect to the *Tiano*

12

lawsuit because the endorsement itself also contained very specific exclusions which are applicable

here. It stated:

> 2. We do not pay for any loss of any kind on behalf of any person who participates in or directs any sexual act, or who knowingly allows any sexual act to occur.
>
>      \* \* \*
>
> 4. We do not pay for loss of any kind arising directly or indirectly out of any sexual act if you, your present leaders or your past leaders while in your service, had actual knowledge that:
>
> a. an alleged perpetrator employed or appointed by you or representing you has:
>
>      \* \* \*
>
>     3.      admitted to anyone that he or she participated in any previous molestation act.
>
> b. an alleged perpetrator employed or appointed by you or representing you has:
>
>     1)      been formally dismissed or disciplined in relation to any previous extramarital sexual act; or
>
>     2)      admitted to anyone that he or she had participated in any previous extramarital sexual act.
>
> But this exclusion 4b applies only if the previous extramarital sexual act took place within five (5) years of the first sexual act out of which a subsequent claim arises.

R. 11, Ex. 4, p. 3.

Pastor Don admitted participation in one or more extramarital sexual acts with Tiano and he

confessed the same to Pastor Leonard. He also admitted to a previous extramarital sexual act within

the 5-year period preceding the sexual act(s) with Tiano. Pastor Leonard admits that he knew of his

son's actions. As a result of these admissions, exclusions 2 and 4b both apply to preclude indemnity

under the Sexual Acts Liability Coverage endorsement for any loss suffered by Tiano.

13

(*Case No. 03-2396*)

We find no error in the district court's conclusion that there was neither a duty to indemnify nor a duty to defend under BMIC's policy of insurance.

## III

For the reasons set forth herein, we AFFIRM the decision of the district court.