*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GUILLERMINA MOTA-PEGUERO,

        Plaintiff,

and

ANESTHESIA SERVICES AFFILIATES as
Assignee of Guillermina Mota-Peguero, MICHIGAN
AMBULATORY SURGICAL CENTER, as assignee
of Guillermina Mota-Peguero, and PHASE ONE
REHAB, LLC,

        Intervening Plaintiffs,

and

SPINE SPECIALISTS OF MICHIGAN, PC,

        Intervening Plaintiff-Appellant,

v

FALLS LAKE NATIONAL INSURANCE
COMPANY,

        Defendant-Appellee,

and

WARDELL DWAN BOYD and LEONARD
JOSEPH ANTHONY,

        Defendants.

FOR PUBLICATION
March 28, 2024
9:00 a.m.

No. 364103
Wayne Circuit Court
LC No. 2021-008640-NI

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

-1-

YATES, J.

Intervening plaintiff, Spine Specialists of Michigan, PC (Spine Specialists), provided care to Guillermina Mota-Peguero after she was involved in a motor vehicle collision. As it turned out, Mota-Peguero incorrectly stated on her application for automobile insurance coverage that she had no dependent children living with her and she had no plans to drive for a ride-sharing service, such as Uber or Lyft. Based upon the allegation that Mota-Peguero committed fraud in her application for no-fault insurance coverage, defendant, Falls Lake National Insurance Company (Falls Lake), sought and obtained summary disposition against Spine Specialists under MCR 2.116(C)(10). On appeal, Spine Specialists contends that the trial court could not foreclose its claim without holding a hearing to determine whether rescission was warranted based upon Mota-Peguero's fraudulent misrepresentations. We conclude that the trial court incorrectly awarded summary disposition to Falls Lake, so we reverse that order and remand for further proceedings.

## I. FACTUAL BACKGROUND

In February 2020, Mota-Peguero applied for automobile insurance from Falls Lake. In her application, Mota-Peguero said "no" when asked if her vehicle would be "used to carry persons or property for compensation or a fee (transportation networks, ridesharing, Uber, Lyft, taxis, etc.)." Also, when asked to identify "[a]ll household members age 14 or older, including but not limited to spouse(s), roommate(s), children, family members, and wards[,]" Mota-Peguero only identified herself. But at Mota-Peguero's deposition, she revealed that she used her vehicle to drive for Uber and Lyft. Additionally, she disclosed that she had a 16-year-old daughter who lived with her.

On February 16, 2020, Mota-Peguero was involved in a motor vehicle collision, and then she sought medical treatment from Spine Specialists. Mota-Peguero made a claim on her insurance after the collision, but Falls Lake rescinded her automobile insurance policy, informing her through a claims-management company that "[u]nderwriting has advised that, as a result of the commercial use of your 2016 Malibu and [your 16-year-old daughter] Valentina living in your home, the policy application would not have been accepted by Falls Lake, and a policy would not have been written or maintained without disclosure of how you used your vehicles and who lived with you, so that it could properly evaluate the risk associated with issuing your policy."

On July 16, 2021, Mota-Peguero sued Falls Lake and others, demanding first-party benefits under the no-fault act, MCL 500.3101 *et seq*., and other relief. Health-care providers subsequently intervened, including Spine Specialists, which filed an "intervening complaint" pursuant to MCL 500.3112 on February 25, 2022. Falls Lake responded by seeking summary disposition against Mota-Peguero and all of the health-care providers based on material misrepresentations allegedly made by Mota-Peguero in her application for insurance. Specifically, Falls Lake sought rescission of Mota-Peguero's insurance coverage and reasoned that that relief would foreclose the claims of the health-care providers as well as Mota-Peguero's demand for first-party benefits.

The trial court conducted oral argument on Falls Lake's motion for summary disposition on July 27, 2022, and ruled from the bench that Falls Lake was entitled to complete relief pursuant to MCR 2.116(C)(10) against Mota-Peguero and all of the health-care providers on their demands for first-party benefits. Specifically, the trial court described the case as fraud in the procurement of an automobile insurance policy, excused Falls Lake's failure to provide an affidavit stating that revelation of Mota-Peguero's misrepresentations would have resulted in an increased premium for

-2-

insurance coverage, and concluded that the health-care providers' claims failed because they "have a derivative claim of" Mota-Peguero "and as a result their claim[s] fail as well." The trial court memorialized its rulings in an order issued on July 28, 2022, and this appeal followed.

## II. LEGAL ANALYSIS

Spine Specialists argues on appeal that the trial court erred in granting summary disposition to Falls Lake under MCR 2.116(C)(10) for two reasons: (1) the record does not contain evidence demonstrating the materiality of Mota-Peguero's misrepresentations; and (2) Falls Lake's right to rescind Mota-Peguero's insurance policy does not automatically defeat Spine Specialists's claim as a health-care provider under MCL 500.3112. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. Such an issue "exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Applying these standards, we shall address each of the two challenges to the summary disposition award advanced by Spine Specialists.

## A. MATERIALITY OF THE MISREPRESENTATIONS

Falls Lake obtained summary disposition under MCR 2.116(C)(10) by persuading the trial court to rescind the insurance contract Falls Lake made with Mota-Peguero, and thereby excuse it from its obligations under the automobile insurance policy. Thus, Falls Lake obtained rescission because of Mota-Peguero's fraudulent misrepresentations in seeking insurance coverage. "[F]raud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies." *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012). "One equitable remedy that may be available is rescission." *Wilmore-Moody v Zakir*, 511 Mich 76, 84; 999 NW2d 1 (2023). But the remedy of rescission requires proof of a fraudulent misrepresentation that was material. *Titan*, 491 Mich at 555. Here, Spine Specialists contends that Falls Lake presented no evidence to show that Mota-Peguero's misrepresentations about her daughter and her activities in driving for ride-sharing services were material.

"The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959) (quotation marks, citation, and emphasis omitted). In other words, "[t]he proper materiality question is whether 'the' contract issued, at the specific premium rate agreed upon, would have been issued notwithstanding the misrepresented facts." *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 254; 632 NW2d 126 (2001).

The trial court hinted that Mota-Peguero's failure to disclose that her 16-year-old daughter lived with her was not a material misrepresentation, so it would not have been a basis for rescission on its own. But the trial court determined that Mota-Peguero's failure to disclose that she used the vehicle to drive for Uber and Lyft was a material misrepresentation. Based on this Court's opinion in *Fatty v Farm Bureau Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2023 (Docket No. 363888), we agree. In *Fatty*, just as in this case, "[o]n the application for insurance, the plaintiff answered the following question in the negative: 'Are any vehicles to be insured used to carry persons for a fee?' " *Id*. at 1. Indeed, in this case, the question that plaintiff answered in the negative was even more precisely worded: "Are any vehicles used to carry persons or property for compensation or a fee (transportation networks, ridesharing, Uber, Lyft, taxis, etc.)?" This Court made clear in *Fatty* that that false representation satisfied all of the elements necessary to support rescission of the insurance policy issued to the insured, so the insurer was entitled to summary disposition against its insured. *Id*. at 5-6. Although *Fatty* is not "binding under the rule of stare decisis[,]" MCR 7.215(C)(1), we nonetheless find its reasoning persuasive, see *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010), so we shall apply its analysis in this case. Accordingly, based on *Fatty*, we conclude that the trial court properly ruled that Falls Lake was entitled to rescind Mota-Peguero's insurance policy.

## B. THE IMPACT OF RESCISSION OF THE INSURANCE POLICY

The more fundamental issue presented in this appeal concerns the effect of rescission upon the claims of health-care providers. The trial court awarded Falls Lake summary disposition under MCR 2.116(C)(10) on all the claims of the health-care providers because "[t]hey have a derivative claim of the plaintiff" and "[t]he plaintiff's claim failed because of this material misrepresentation, and as a result their claim[s] fail as well." Although Michigan law at one time permitted providers to pursue relief from automobile insurers exclusively through the assignment of claims, *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 196, 217 n 40; 895 NW2d 490 (2018), and thereby rendered providers' claims derivative in the sense contemplated by the trial court, our Legislature subsequently altered that framework by amending the no-fault act, MCL 500.3112, to enable providers to pursue claims in their own right. That statutory amendment renders inoperative the trial court's characterization of Spine Specialists's claim as "derivative" in this case.

In 2019, "the Legislature significantly overhauled the no-fault act." *Andary v USAA Cas Ins Co*, 512 Mich 207, 214; 1 NW3d 186 (2023). As a part of that major revision, the Legislature amended MCL 500.3112 to afford health-care providers a direct cause of action, as opposed to the right to proceed only on the basis of an assignment. Specifically, MCL 500.3112 now dictates that "[a] health care provider . . . may make a claim and assert a direct cause of action against an insurer . . . to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." Thus, a health-care provider no longer must stand in the shoes of an injured person to pursue a no-fault claim against an insurer. Consequently, the trial court erred

-4-

in characterizing Spine Specialists's claim as "derivative," and therefore necessarily foreclosed by rescission of the insurance policy that Falls Lake issued to Mota-Peguero.[1]

In its order granting Falls Lake summary disposition, the trial court stated that "Falls Lake is entitled to rescind and thereby void the policy *ab initio* issued to [p]laintiff . . . Mota-Peguero, due to the fraudulent nature in which the policy was obtained *and that Falls Lake has no duty or obligation to pay for any alleged damages* purportedly arising out of the February 16, 2020 motor vehicle accident pursuant to MCL 500.3107 by any providers of products, treatment, services, or accommodations." (Emphasis added.) In other words, the trial court decided that rejection of the providers' claims followed from a finding that Mota-Peguero made fraudulent misrepresentations in her insurance application. But that approach, which involves automatic preclusion of providers' claims, cannot be squared with the rules governing rescission.

When addressing the intervening interests of parties other than the fraudulent insured, our Supreme Court ruled that "rescission does not function by automatic operation of the law." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411; 919 NW2d 20 (2018). "Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties." *Id.* In *Bazzi*, our Supreme Court stated that the policy between the insurer and the insured was "void *ab initio* due to the fraudulent manner in which it was acquired," but the trial court nonetheless was required to determine "whether, in its discretion, rescission of the insurance policy is available between" the insurer and a third party. *Id.* at 412. In reaching its conclusion, our Supreme Court explained that "when two equally innocent parties are affected, the court is required, in the exercise of its equitable powers, to determine which blameless party should assume the loss[.]" *Id.* at 410-411 (quotation marks and citation omitted).

Employing that line of reasoning, this Court recently concluded that a provider's interests were not properly litigated where the trial court that granted rescission "was dealing with only the [insured's] claims, and did not consider [the provider's] interest when deciding that rescission was just and equitable." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359681); slip op at 7. Thus, this Court refused to dismiss the provider's claim as a matter of res judicata or collateral estoppel that flowed from the finding that the insured obtained an insurance policy through fraudulent misrepresentations. *Id.* Although that decision arose in the context of a motion for summary disposition under MCR 2.116(C)(7) based on the invocation of res judicata and collateral estoppel, its reasoning applies here with equal force to Falls Lake's request for summary disposition under MCR 2.116(C)(10) where the trial court did not give separate consideration to the claims of the providers after concluding that Mota-Peguero had made material misrepresentations to obtain her automobile insurance policy.

---

[1] In Count II of its intervening complaint, entitled "Claim for Personal Injury Protection Benefits" against Falls Lake, Spine Specialists stated that, "[p]ursuant to MCL 500.3112, a medical provider may make a claim and assert a direct cause of action against an insurer to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." As a result, Spine Specialists manifestly has asserted a direct claim against Falls Lake.

There are two noteworthy points concerning the terminology surrounding this issue. First, although the phrase "innocent third party" is still used, the innocent-third-party doctrine—which barred rescission as to innocent third parties—was abrogated by our Supreme Court's decision in *Bazzi*, 502 Mich at 411-412. Accordingly, just as rescission does not automatically apply to parties other than the insured, rescission is likewise not barred as to those parties. *Id*. at 411; see also *Univ of Mich Regents v Mich Auto Ins Placement Facility*, 340 Mich App 196, 201; 986 NW2d 152 (2022) ("Thus, while the innocent-third-party doctrine no longer bars insurers from seeking rescission for fraud, insurers are not categorically entitled to rescission."). Second, an insurance policy is not fully rescinded, but merely "reformed," when "the insurer could not rescind as to the third parties, but could rescind as to any claims by the fraudulent insured[.]" *Bazzi*, 502 Mich at 412 n 12.

Here, faced with a direct claim by a provider, i.e., Spine Specialists, the trial court had the obligation to balance the equities of rescission, and therefore erred when it automatically dismissed Spine Specialists's claim based on Mota-Peguero's material misrepresentations. *Bazzi*, 502 Mich at 411; *C-Spine Orthopedics*, ___ Mich App at ___; slip op at 7. This is true even though the trial court correctly concluded that Mota-Peguero made material misrepresentations on her application for insurance. By automatically awarding rescission to preclude Spine Specialists's claim, the trial court failed to consider Spine Specialists's interests. *C-Spine Orthopedics*, ___ Mich App at ___; slip op at 7. The trial court's approach conflicts with our Supreme Court's holding in *Bazzi*, 502 Mich at 411-412, so it necessarily constitutes reversible error.

Although Spine Specialists encourages us to conduct the rescission analysis contemplated by our Supreme Court in *Bazzi*, we believe that the proper course obligates us to remand the case to the trial court, which "must now determine whether, in its discretion, rescission" is available as between Falls Lake and Spine Specialists. See *Bazzi*, 502 Mich at 412. The trial court may choose to be guided in its analysis by the nonexclusive list of factors we listed in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 410-411; 952 NW2d 586 (2020), but we recognize that some of those factors are ill-suited to the consideration of rescission in the context of a dispute between an insurer and a health-care provider. Thus, we entrust to the trial court's discretion the identification of factors that should guide its rescission analysis.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Michael F. Gadola
/s/ Christopher M. Murray