BECKERING, J.
(dissenting). At issue in this appeal is whether our Supreme Court’s decision in Titan Ins Co v Hyten, 491 Mich 547; 817 NW2d 562 (2012), which threw out the “easily ascertainable rule,” adversely impacted and necessarily abrogated the “innocent-third-party rule,” which I maintain is a distinctly different rule and one to which this Court has adhered for decades without complaint or redirection from either our Supreme Court or our Legislature. With all due respect for my esteemed colleagues, I would conclude that the easily-ascertainable-fraud and innocent-third-party rules are not “one and the same,” and caselaw bears out a clear distinction. Furthermore, because they are different rules and because the coverage at issue in Titan—contractually based excess liability coverage—is substantially different from the type of coverage at issue in this case—statutorily mandated benefits—I would decline to extend Titan and would instead adhere to 30 years of this Court’s published decisions applying the innocent-third-party rule. In this respect, I would affirm the decision of the circuit court, save for the circuit court’s decision to limit personal protection insurance (PIP) benefits to *790 the statutory mínimums set forth in MCL 257.520, which does not apply to the coverage at issue.
I. THE INNOCENT-THIRD-PARTY RULE IS NOT THE SAME AS THE EASILY-ASCERTAINABLE-FRAUD RULE
Before diving into the effect of Titan, I would be remiss not to address the majority and concurring opinions’ conclusion that the easily-ascertainable-fraud rule and the innocent-third-party rule are one and the same. They are not. My colleagues conclude that they are the same in part because they both necessarily involve an innocent third party. While this observation is accurate, any attempt to equate them disregards the context in which they have been used and overlooks pertinent caselaw. The innocent-third-party rule has consistently been applied to prevent an insurer from avoiding liability as to mandatory coverage—namely PIP benefits, while the easily-ascertainable-fraud rule had, before it was overruled in Titan, consistently been applied to prevent an insurer from avoiding optional coverage, i.e., nonstatu-tory coverage, when the insured’s fraud was easily ascertainable. See, e.g., Farmers Ins Exch v Anderson, 206 Mich App 214; 520 NW2d 686 (1994), overruled by Titan, 491 Mich 547; State Farm Mut Auto Ins Co v Kurylowicz, 67 Mich App 568; 242 NW2d 530, overruled by Titan, 491 Mich 547.
The difference between the rules can be put simply: the innocent-third-party rule acts as a prohibition against rescinding a policy that was procured by fraud, but only as to mandatory coverage—specifically PIP coverage—for innocent third parties, while the now-overruled easily-ascertainable-fraud rule prevented a defrauded insurer from avoiding liability with respect to optional coverage. Stated differently, the innocent-third-party rule concerns statutory benefits, and the *791 easily-ascertainable-fraud rule pertains to benefits originating in the insurance policy. Thus, the rules serve distinct purposes and relate to different types of insurance coverage. This Court has recognized this very principle in the past. See Manier v MIC Gen Ins Corp, 281 Mich App 485, 489-492; 760 NW2d 293 (2008), overruled by Titan, 491 Mich 547; Lake States Ins Co v Wilson, 231 Mich App 327, 331-332; 586 NW2d 113 (1998); Anderson, 206 Mich App at 216-219. For instance, in.Anderson, 206 MichApp at 217, a case that was overruled by Titan for its application of the easily-ascertainable-fraud rule, the insurer, much like the insurer in Titan, conceded liability for the statutorily mandated $20,000/$40,000 limits found in MCL 257.520(f)(1).[1] The issue before this Court was whether the insurer, “upon discovering that the insured has made fraudulent and material misrepresentations in procuring the policy, may assert rescission as a basis to limit its liability to the statutory minimum, even when innocent third parties have been injured.” Anderson, 206 MichApp at 217. In resolving this issue, the panel noted the innocent-third-party rule and declared that, in light of the rule, the insurer conceded it could not rescind the policy as to statutorily mandated coverage, i.e., the $20,000 and $40,000 limits imposed by MCL 257.520(f)(1). Id. at 218. This, of course, was required, in large part, by MCL 257.520(f)(1).[2] Nevertheless, the insurer sought to limit its liability for optional, nonsta-tutory coverage. Optional liability coverage, which is addressed in MCL 257.520(g), does not include the same statutory limitation on obtaining rescission in *792 the case of fraud. Anderson, 206 Mich App at 218-219. Accordingly, “when fraud is used as a defense in situations such as these,” the panel explained, “the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into.” Id. at 219. In other words, the easily-ascertainable-fraud rule was to be applied to determine whether the insurer could rescind the policy as it pertained only to optional liability coverage.[3] So long as the fraud was not easily ascertainable, the insurer could void the policy as to this optional liability coverage. Id. If the fraud was easily ascertainable, the burden was essentially on the insurer for not having discovered and dealt with it. A review of our caselaw reveals that the easily-ascertainable-fraud rule has a history of application to optional liability coverage. See, e.g., Titan, 491 Mich 547; Manier, 281 Mich App 485; Kurylowicz, 67 Mich App 568.
The panel in Wilson, 231 Mich App at 331-332, in a slightly different factual scenario involving PIP benefits, reinforced the idea that the rules are not the same, specifying that the innocent-third-party rule acted as a bar against rescinding a policy as it concerns statutorily mandated benefits, and that the easily- *793 ascertainable-fraud rule pertained to an insurer’s attempts to limit its liability as to optional coverage.[4] The panel in Wilson applied the same type of bar against rescission as found in MCL 257.520(f)(1) to PIP benefits based on their mandatory nature. The panel summarized the innocent-third-party rule and the easily-ascertainable-fraud rule and their respective applications as follows:
Once an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is estopped from asserting fraud to rescind the insurance contract. However, an insurer is not precluded from rescinding the policy to void any ‘optional’ insurance coverage, unless the fraud or misrepresentation could have been ‘ascertained easily’ by the insurer. [Id. at 331-332 (citations omitted; emphasis added).]
Thus, as is apparent from this Court’s opinion in Wilson, the innocent-third-party rule and the easily-ascertainable-fraud rule are different. The innocent-third-party rule concerns mandatory coverage and arises from the fact that the coverage is mandatory, while the easily-ascertainable-fraud rule applies to optional coverage. Essentially, the innocent-third-party rule is a rule that applies to PIP benefits and protects entitlement to those benefits. Consistently with this rationale, this Court has applied the *794 innocent-third-party rule in the context of PIP benefits. See, e.g., Roberts v Titan Ins Co (On Reconsideration), 282 Mich App 339, 360; 764 NW2d 304 (2009), overruled in part on other grounds Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich, 492 Mich 503; 821 NW2d 117 (2012).
This distinction is of critical importance to the instant case, as the concern in this case is with mandatory PIP benefits, not optional excess liability coverage.[5] Moreover, this distinction explains away with relative ease the result that the majority opinion describes as “bizarre” and the concurring opinion says “simply make[s] no sense.” That is, in concluding that the easily-ascertainable-fraud rule and the innocent-third-party rule are essentially the same, both the majority opinion and the concurring opinion postulate that the rules must be treated as the same, because if an insurer can avoid liability when fraud is easily ascertainable, it must logically be able to avoid liability when the fraud was not easily ascertainable. If we were truly dealing with rules that applied in the same context and to the same type of coverage, this concern would be a valid one. However, given that caselaw has clearly applied the innocent-third-party rule to mandatory coverage, whereas the easily-ascertainable-fraud rule has been applied to optional coverage, the rules can be reconciled, and the concerns of the majority and concurring opinions quickly dissipate. With regard to mandatory coverage, whether the fraud was easily ascertainable matters not; the insurer is not permitted to rescind once an innocent third party is injured. However, with regard to optional coverage, the insurer is only prevented from rescinding the policy as it concerns such optional coverage if the fraud was easily *795 ascertainable. Our Supreme Court in Titan did away with the bar against an insurer rescinding optional coverage in the face of easily ascertainable fraud.
I take issue with the majority and concurring opinions’ conclusions that our Supreme Court’s decision in Titan necessarily recognized that the innocent-third-party rule and the easily-ascertainable-fraud rule are one and the same. In fact, our Supreme Court in Titan made no mention of the innocent-third-party rule, nor did it weigh in on whether fraud could be asserted as a basis to avoid liability in the context of statutorily mandated benefits. The subject of statutorily mandated coverage was simply not before the Court in Titan, as the insurer in that case expressly conceded its liability for mandatory coverage and only sought a declaration “that it was not obligated to indemnify [the insured] for any amounts above the minimum liability coverage limits required by the financial responsibility act. . . .” Titan, 491 Mich at 552 n 2. Hence, the issue before the Titan Court was the application of the easily-ascertainable-fraud rule, and Titan did not implicate the innocent-third-party rule.
Along similar lines, I note that the majority and concurring opinions observe that our Supreme Court in Titan overruled this Court’s decision in Ohio Farmers Ins Co v Mich Mut Ins Co, 179 Mich App 355, 358, 364-365; 445 NW2d 228 (1989), and conclude that: (1) Ohio Farmers discussed the innocent-third-party rule and (2) therefore, the Supreme Court in Titan must have necessarily overruled the innocent-third-party rule. Assuming that the decision in Ohio Farmers implicated the innocent-third-party rule, I disagree with my colleagues’ conclusions. First, our Supreme Court in Titan, 491 Mich at 551 n 1, did not make any *796 sweeping declarations about Ohio Farmers;[6] rather, it only overruled the case “[t]o the extent” that it “held or stated that an insurer is estopped from denying coverage on the basis of fraud when it could have easily ascertained the fraud . . . This language is in line with the easily-ascertainable-fraud rule, not the innocent-third-party rule. Noticeably absent from this qualified and narrow rejection of Ohio Farmers is any discussion about whether an insurer can deny mandatory, statutorily required coverage to an innocent third party on the basis of fraud. Thus, even assuming that Ohio Farmers only implicated the innocent-third-party rule, an assumption that is not entirely apparent from the text of the Ohio Farmers decision, the Court in Titan made no comment about the innocent-third-party rule. Second, contrary to what the majority and concurring opinions postulate—and regardless of what Ohio Farmers actually says—our Supreme Court in Titan seemed to think that Ohio Farmers concerned the easily-ascertainable-fraud rule. See Titan, 491 Mich at 563-564 (“[Ujnder the Kurylowicz rule, an insurer may not avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud when the fraud was easily ascertainable and the claimant is a third party. See, e.g., Ohio Farmers Ins Co v Mich Mut Ins Co, 179 Mich App 355; 4[4]5 NW2d 228 (1989).”) (emphasis added). Accordingly, any suggestion that Titan was overruling Ohio Farmers for some other reason—for *797 instance, that it discussed the innocent-third-party rule—is not apparent from the Court’s decision in Titan. Third, and on a somewhat related note, I disagree that Titan’s qualified overruling of Ohio Farmers can be construed to reject a rule that Titan itself never mentioned.[7]
Aside from taking issue with the conclusion that the rules are one and the same, I take issue with the majority opinion’s conclusion that both the easily-ascertainable-fraud rule and the innocent-third-party rule “have their roots in the Kurylowicz decision.” Examination of the case conclusively dispels the notion that the innocent-third-party rule was sired by Kurylowicz. Indeed, the sole concern in Kurylowicz was whether an insurer has a duty to investigate representations made by an insured, and the panel in Kurylowicz expressly rejected the opportunity to weigh in on the innocent-third-party rule. Also, there is no indication that Kurylowicz involved a claim for mandatory coverage.
In Kurylowicz, 67 Mich App at 569, the plaintiff, State Farm, appealed as of right a declaratory judgment that stated it was not allowed to rescind a policy for optional,[8] or nonstatutorily mandated, liability coverage ab initio when the policy was procured through fraud. In that case, the insured, defendant Robert J. Kurylowicz, made a material misrepresen *798 tation in his application for insurance when answering the question whether his driver’s license had ever been revoked or suspended. Id. at 570. State Farm, which relied on our Supreme Court’s decision in Keys v Pace, 358 Mich 74; 99 NW2d 547 (1959), argued that an insurer was entitled to rescind a policy on the basis of a material misrepresentation and that there was no duty imposed on the insurer to investigate the subject of the alleged fraud.[9] Kurylowicz, 67 Mich App at 571.
This Court, in an effort to avoid the application of Keys, noted that our Legislature had amended various statutes since our Supreme Court issued Keys, including statutes regarding the cancellation of insurance policies, MCL 500.3220, and the motor vehicle accident claims act, MCL 257.1101 et seq., which the panel described as providing compensation for citizens injured by uninsured tortfeasors. Kurylowicz, 67 Mich App at 573. Further, this Court noted that although the case currently before it was not controlled by the no-fault act, the enactment of the no-fault act, MCL 500.3101 et seq., reflected a legislative policy of providing compensation to lessen “the tragic social and economic consequences that often accompany automobile *799 mishaps.” Kurylowicz, 67 Mich App at 573.[10] Reading the legislative enactments as a whole, this Court arrived at the idea that the statutes formulated a “policy” of providing “persons who suffer loss due to the tragedy of automobile accidents in this state ... a source and a means of recovery.” Id. at 574. “Given this policy,” said the panel, “it is questionable whether a policy of automobile insurance can ever be held void ab initio after injury covered by the policy occurs.” Id.[11]
With that “policy” as a backdrop, the panel cited a treatise for the proposition that an insurer’s liability “with respect to insurance required by the act” becomes absolute “whenever injury or damage covered by such policy occurs . . . .” Id. (citation and quotation marks omitted). However, the panel was quick to observe that “[t]hat issue is not before us in this case”—whether liability with respect to insurance required by law became absolute upon the happening of an injury— “so we need not decide it.” Id. Hence, the panel expressly declined to comment on the innocent-third-party rule—which is implicated in situations involving the “liability of the insurer with respect to insurance required by the [no-fault] act.” Id. (quotation marks and citation omitted). Instead, stated the panel, “[w]e need only decide whether, under the facts of the case at bar, State Farm reasonably relied on the representations of the insured so as to justify a holding *800 that the policy was procured by fraud, thus warranting a judicial determination that the policy was void ab initio.” Id. (first emphasis added).
The panel’s framing of this issue is of particular significance and illustrates the fatal flaw in the majority opinion’s conclusion that Kurylowicz created the innocent-third-party rule. The focus of the issue in that case was the insurer’s reasonable reliance, or lack thereof, on the insured’s representations. And when the panel mentioned the scenario that implicates the innocent-third-party rule—liability mandated by statute and an injured third party—it expressly declined to consider it in any detail. It cannot reasonably be argued that Kurylowicz created a rule it took special care to avoid.
Indeed, the only issue in Kurylowicz concerned whether the insurer should have accepted certain representations at face value, or whether the insurer should have discovered that the representations were false. The rest of the opinion in Kurylowicz was spent answering that question, and only that question, as evidenced by the panel citing caselaw from other jurisdictions that imposed on an insurer a duty to investigate representations made by insureds in insurance applications. Id. at 574-577, citing Allstate Ins Co v Sullam, 76 Misc 2d 87; 349 NYS2d 550 (1973); State Farm Mut Ins Co v Wood, 25 Utah 2d 427; 483 P2d 892 (1971); Barrera v State Farm Mut Auto Ins Co, 71 Cal 2d 659; 79 Cal Rptr 106; 456 P2d 674 (1969); State Farm Mut Auto Ins Co v Wall, 92 NJ Super 92; 222 A2d 282 (NJ Sup Ct, 1966). The panel then went on to impose a duty on the insurer in that case to make a reasonable investigation of an insured’s representations in an application for insurance. This is precisely contrary to the tenets of Keys.
*801 Because the instant case does not involve the imposition of a duty on an insurer to investigate representations made by a prospective insured, and given that Titan overruled Kurylowicz for failing to follow the precedent established in Keys, Kurylowicz is not dis-positive in this case. Likewise, any assertion that the innocent-third-party rule is the same as the easily-ascertainable-fraud rule set forth in Kurylowicz is incorrect and does not resolve the issue in this case. However, that does not end the inquiry; it merely ferrets out a red herring proffered by the majority and concurring opinions. Indeed, although the Supreme Court in Titan overruled Kurylowicz for ignoring precedent established in Keys, the Court’s opinion went beyond merely overruling this Court’s decision for ignoring Supreme Court precedent. Notably, for purposes of this opinion, the Court in Titan went on to: (1) clarify the conditions under which a policy for insurance may be rescinded and (2) decry what it described as the “reasoning” employed by Kurylowicz. It is in those aspects of Titan that the parties argue the Court eroded the support on which the innocent-third-party rule rests and which require extensive discussion in this case. To resolve the more pertinent issue of whether the Court’s analysis in Titan erodes support for the innocent-third-party rule, I find it necessary to examine Titan, as well as the origins and development of the innocent-third-party rule.
II. THE INNOCENT-THIRD-PARTY RULE
The innocent-third-party rule has been firmly entrenched in this Court’s jurisprudence for the past three decades and has never been questioned by our Supreme Court, nor has it prompted the Legislature to revise the no-fault law. In general, an insurer may *802 rescind a policy ab initio because of fraud. Roberts, 282 Mich App at 359-360. However, under the innocent-third-party rule, “an insurer may not void a policy of insurance ab initio where an innocent third party is affected” and the type of coverage at issue is mandatory coverage. Id,.[12] As stated in Roberts, “caselaw demonstrates that the innocent third party doctrine ensures coverage for any person who is innocent of participation in the alleged fraud.” Id. at 361.
For decades, this Court has adhered to the innocent-third-party rule in cases in which the insured sought statutory, i.e., nonoptional, benefits and precluded insurers from denying coverage to injured third parties who were innocent of the insured’s fraud. See, e.g., Wilson, 231 Mich App at 331; Hammoud v Metro Prop & Cas Ins Co, 222 Mich App 485, 488; 563 NW2d 716 (1997); Burton v Wolverine Mut Ins Co, 213 Mich App 514, 517 n 2; 540 NW2d 480 (1995); Auto-Owners Ins Co v Johnson, 209 Mich App 61, 64; 530 NW2d 485 (1995); Katinsky v Auto Club Ins Ass’n, 201 Mich App 167, 170; 505 NW2d 895 (1993); Darnell v Auto-Owners Ins Co, 142 Mich App 1, 9; 369 NW2d 243 (1985); Cunningham v Citizens Ins Co of America, 133 Mich App 471, 477; 350 NW2d 283 (1984); United Security Ins Co v Comm’r of Ins, 133 Mich App 38, 43; 348 NW2d 34 (1984).[13] In fact, our Supreme Court has also protected innocent parties from the fraud of others in the context of insurance policies, albeit in a case dealing with a “statutory fire insurance policy.” See *803 Morgan v Cincinnati Ins Co, 411 Mich 267, 277; 307 NW2d 53 (1981). (“[W]henever the statutory clause limiting the insurer’s liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud.”). Yet as the parties point out, although this Court’s precedent with regard to the innocent-third-party rule is well established, the rationale and reasoning cited for the existence of the rule has varied. For instance, this Court’s justifications for the innocent-third-party rule have ranged from public policy, Katinsky, 201 Mich App at 171, to reliance on our Supreme Court’s decision in Morgan, Darnell, 142 Mich App at 10, to the language in MCL 257.520(f)[14] of the financial responsibility act, Wilson, 231 Mich App at 331. Despite the varying rationales employed in arriving at the innocent-third-party rule, its application has, until recently, been fundamental.
The challenges raised against the innocent-third-party rule come from claims by Sentinel and others that our Supreme Court’s decision in Titan, 495 Mich 547, implicitly overruled the innocent-third-party rule. Accordingly, our Supreme Court’s decision in Titan must be examined.
III. TITAN v HYTEN
While much is being made about what Titan says and implies, it is helpful to focus first on what Titan does not say. For example, and most notably, the innocent-third-party rule was not at issue in Titan, 491 *804 Mich 547. In addition, Titan did not involve no-fault PIP benefits, nor did it involve any other statutorily required benefits. Rather, in Titan, our Supreme Court examined the so-called “easily ascertainable” fraud rule and addressed whether, in a case involving excess liability coverage, an insurer could rescind that coverage on the basis of fraud in the procurement of the policy when the fraud was easily ascertainable by the insurer. Id. at 550-551. In Titan, McKinley Hyten, whose mother, Anne Johnson, had made fraudulent misrepresentations in her application for no-fault insurance, was involved in a motor vehicle accident with Howard and Martha Holmes. Id. at 552. Anticipating that the Holmeses would file a third-party tort claim against Hyten for their injuries, Titan sought to rescind the excess liability coverage because of Johnson’s material misrepresentations. Id. In particular, Titan requested declaratory relief stating that should the Holmeses prevail in an action against Hyten, Titan was not required to provide liability coverage under the policy in excess of the statutory mínimums set forth in MCL 257.520 of the financial responsibility act.[15] The trial court held that the easily-ascertainable-fraud rule applied and prevented Titan from avoiding liability because the alleged fraud was easily ascertainable.[16] Id. This Court affirmed, relying on a line of decisions dating back to Kurylowicz, 67 Mich App 568, in which the insurer’s attempt to rescind the particular insured’s policy for optional coverage because of fraud by *805 the insured in the policy application was rejected because the fraud was easily ascertainable by the insurer. Titan Ins Co v Hyten, 291 Mich App 445, 454-458, 461-462; 805 NW2d 503 (2011), rev’d 491 Mich 547.
In examining the viability of the easily-ascertainable-fraud rule, the Supreme Court in Titan began by recognizing that insurance policies are contracts, and that, “when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute.” Titan, 491 Mich at 554. Titan, id., cited Rohlman v Hawkeye-Security Ins Co, 442 Mich 520, 524-525; 502 NW 2d 310 (1993), for the proposition that “because personal injury protection benefits are mandated by MCL 500.3105, that statute governs issues regarding an award of those benefits.” Titan noted that conversely, “when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute.” Titan, 491 Mich at 554. In addition, “because insurance policies are contracts, common-law defenses”—such as fraud—“may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute.” Id.
The Court then looked at the various common-law doctrines of fraud that exist in Michigan and concluded that common-law fraud did not include as an element that the party asserting the fraud prove the fraud was not easily ascertainable. For this reason, the common-law doctrines of fraud did not support the existence of the easily-ascertainable-fraud rule. Id. at 555-557.
Next, the Court looked at the different remedies available in those instances in which a contract was procured by fraud. Id. at 557-558. Because contracts *806 must be construed in conjunction with the applicable law, the Court recognized that common-law remedies “may be limited or narrowed by statute.” Id. at 558. For instance, MCL 257.520(f)(1) of the financial responsibility act “limits the ability of an insurer to avoid liability on the ground of fraud in obtaining a motor vehicle liability policy with respect to the insurance required by” the financial responsibility act—$20,000 for bodily injury or death to one person, and $40,000 for bodily injury or death to two or more persons—even in the face of fraud or misrepresentations. Id., citing MCL 257.520(f)(1). However, the Titan Court concluded that the limitation imposed by MCL 257.520(f)(1) was limited to a liability policy that was certified under the financial responsibility act. Id. at 559-560.[17] Therefore, the Court found no statutory limitations on the right to rescind a policy with regard to excess liability coverage, i.e., nonstatutory coverage. Id.
With this backdrop, the Court turned its attention to the easily-ascertainable-fraud rule, concluding that its earlier decision in Keys, 358 Mich 74, was outcome-determinative in that Keys had rejected the easily-ascertainable-fraud rule over 50 years ago. Titan, 491 Mich at 562 {“Keys answered the precise question presented in this case[,] . . . holding that an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud, notwithstanding that the fraud *807 may have been easily ascertainable, and notwithstanding that the claimant is a third party.”).
Our Supreme Court noted that despite the fact that Keys had rejected the easily-ascertainable-fraud rule, this Court later reached the opposite conclusion in Kurylowicz; for this reason, Titan overruled Kurylow-icz because it had ignored Supreme Court precedent. Titan, 491 Mich at 572-573. In addition, the Court went on to decry the reasoning employed in Kurylow-icz.[18] The Court first noted that Kurylowicz had justified the easily-ascertainable-fraud rule on the basis of what it determined to be the “public policy” of the no-fault act. Titan, 491 Mich at 564-565. However, our Supreme Court rejected the idea that public policy supported the rule, explaining that the public policy of the no-fault act should be understood in terms of the provisions of the act itself, and not “in terms of a judicial effort to identify some overarching public policy . . . .” Id. at 565. “In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and Kurylowicz1 s efforts to elevate some of its provisions and some of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature.” Id.
Next, in rejecting the purported justifications for the easily-ascertainable-fraud rule, the Court rebuffed the idea that MCL 500.3220[19]—which concerns the cancel *808 lation of automobile liability policies and restricts the ability of the insurer to cancel a policy—did not preclude an insurer from uncovering fraud and pursuing remedies aside from cancellation, such as rescission. Id. at 566-567. In this regard, the Court noted that rescission is a remedy that is distinct from cancellation. Id. at 567-568.
Finally, in concluding that there was no support in the law for the easily-ascertainable-fraud rule, the Court considered—and rejected—the idea that the rule was “required for the protection of third parties.” Id. at 568. The Court explained that “there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship.” Id. The no-fault act protects third parties “in a variety of ways,” reasoned the Court—including allowing tort actions—“but it states nothing about altering the common law that enables insurers to obtain traditional forms of relief when they have been the victims of fraud.” Id. at 568-569. The Court further explained that requiring an insurer to indemnify an insured in spite of fraud “relieves the insured of what would otherwise be the insured’s personal obligation in the face of his or her own misconduct. As between the fraudulent insured and the insurer, there can be no question that the former should bear the burden of his *809 or her fraud.” Id. at 569. In other words, an insured is not entitled to benefit from the protection of excess liability insurance coverage above the statutorily required minimum when he or she purchased that coverage through fraud.
rv. THE INNOCENT-THIRD-PARTY RULE AFTER TITAN
Before weighing in on the issue of whether Titan affects the validity of the innocent-third-party rule in the context of statutorily required PIP benefits, I note that this Court has already had occasion to examine this matter, albeit in unpublished opinions. See Frost v Progressive Mich Ins Co, unpublished opinion per curiam of the Court of Appeals, issued September 23, 2014 (Docket No. 316157); State Farm MutAuto Ins Co v Mich Muni Risk Mgt Auth, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket Nos. 319709 and 319710). Those two cases, however, came to opposite conclusions. Rather than grant leave to appeal in one or both of those cases and resolve firsthand the breadth of its intentions in Titan and whether its rationale should be extended to the innocent-third-party rule and statutorily mandated PIP benefits, our Supreme Court came to the somewhat perplexing conclusion that it should vacate both of those decisions, remand the cases to this Court, order this Court to accept as on leave granted yet another case regarding this issue—the instant case— and hold in abeyance any further rulings in Frost and State Farm pending our resolution in this matter.[20] Hence, I will briefly address Frost and State Farm and *810 the reasoning provided by each panel in coming to its conclusion on the issue at hand.
A. FROST v PROGRESSIVE
The first case following Titan to examine the innocent-third-party rule in the context of PIP benefits was Frost. In Frost, Kenya Frost’s minor daughter was injured in an accident while a passenger in an uninsured automobile. Citizens Insurance Company was assigned by the assigned claims plan to Frost’s daughter’s claim. Progressive had issued a policy of insurance to Frost on her own vehicle, which had been destroyed one month before Frost’s daughter’s accident. Citizens Insurance Company sought reimbursement from Progressive for the benefits it had paid on Frost’s daughter’s behalf.[21] Frost, unpub op at 1-2. Progressive claimed that it had rescinded Frost’s policy ab initio because Frost had procured the policy through fraud. Citizens argued that the innocent-third-party rule barred Progressive’s attempt to rescind as it pertained to Frost’s daughter. In response, Progressive contended that Titan had effectively eliminated the innocent-third-party rule. The trial court concluded that because the accident involving Frost’s daughter had occurred before Progressive attempted to rescind the policy, once the accident occurred Progressive lost its ability to rescind as to Frost’s daughter. Id. at 2. In short, the trial court applied the innocent-third-party doctrine.
On appeal in this Court, the panel overturned the trial court and held that its ruling was “inconsistent with our Supreme Court’s holding” in Titan. Id. The panel explained:
*811 In [Titan], our Supreme Court held that absent statutory provisions to the contrary, “an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party.” [Titan, 491 Mich at 571.] Accordingly, the claim by Frost’s daughter did not bar Progressive from rescinding the policy in this case. [Frost, unpub op at 2.]
B. STATE FARM v MICH MUNI RISK MGT AUTH
Five months after Frost was issued, this Court reached the opposite conclusion in State Farm.[22] Pertinent to the present matter, one of the insurers in that case sought to rescind a policy for no-fault PIP benefits ab initio because it alleged that the policy had been procured by fraud.[23] State Farm, unpub op at 4. The trial court disagreed, concluding that because coverage was required under the no-fault act, the policy could not be rescinded after an innocent third party sustained injuries that would have otherwise been covered under the policy. Id. at 5.
On appeal, a panel of this Court examined the innocent-third-party rule and recognized that “[t]his Court has generally denied an insurer’s right to rescind a policy of insurance in order to avoid payment of no-fault benefits to an innocent third partyf.]” Id. at 9, citing Hammoud, 222 Mich App at 488. “Thus,” the panel explained, “ ‘[o]nce an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is *812 estopped from asserting fraud to rescind the insurance contract.’ ” State Farm, unpub op at 9, quoting Katin-sky, 201 Mich App at 170 (citation omitted; alteration in State Farm).
The relevant insurer in that case argued that the innocent-third-party rule was abrogated by our Supreme Court’s decision in Titan, 491 Mich 547. The panel disagreed, explaining that Titan involved a different type of coverage—optional, excess liability coverage—rather than the mandatory PIP coverage at issue. In addition, the panel noted that Titan did not involve a claim for benefits by an innocent third party. In this regard, the panel explained:
In Titan, our Supreme Court held that an excess insurance carrier may avail itself of the equitable remedy of reformation (of contract) to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even though the fraud was easily ascertainable and the claimant is a third party, so long as the remedies are not prohibited by statute.
[The claimed] entitlement to PIP benefits is statutory, however, not contractual. The insurer in Titan did not seek to avoid payment of statutorily mandated no-fault benefits; in fact, that insurer acknowledged its liability for the minimum liability coverage limits. Nor did Titan address a claim for PIP benefits from an innocent third party. Thus, the holding of Titan, that an insurance carrier may seek reformation to avoid liability for contractual amounts in excess of statutory minimums, does not compel a finding that Titan overruled the many binding decisions of this Court applying the “innocent third-party rule” in the context of PIP benefits and an injured third party who is statutorily entitled to such benefits. [State Farm, unpub op at 9 (citations omitted).]
Because of the key differences between the issue in Titan and the issue involved in State Farm, the panel *813 held that Titan did not abrogate or overrule the innocent-third-party rule. Id. at 9-10.
V. THE INNOCENT-THIRD-PARTY RULE SURVIVES TITAN
I would hold that the panel in State Farm reached the correct result by concluding that the innocent-third-party rule survives Titan in the context of statutorily mandated no-fault benefits, and I would therefore hold that the rule has continuing validity and applies in this case. As the panel did in State Farm, I note that the coverage at issue in this case differs from that which was at issue in Titan. In Titan, contractual liability coverage, i.e., nonstatutory, optional liability coverage, was at issue. In fact, statutory coverage was expressly not at issue in Titan, as the insurer conceded liability for the statutory minimum coverage amounts under the financial responsibility act, despite alleging that the policy was void ab initio because of the insured’s fraud. Titan, 491 Mich at 552 n 2. In other words, Titan involved a case in which the insurer sought to rescind the policy, but acknowledged it was nevertheless responsible for statutory benefits.
In contrast to Titan, the PIP benefits at issue in this case are mandated by statute. See, e.g., MCL 500.3101(1) (mandating that the owner or registrant of a motor vehicle required to be registered in this state “maintain security for payment of benefits under personal protection insurance,” among other types of insurance); MCL 500.3105 (requiring an insurer to pay PIP benefits, subject to the provisions of the no-fault act, and providing no other exceptions to or limitations on that requirement); Johnson v Recca, 492 Mich 169, 173; 821 NW2d 520 (2012); Rohlman v Hawkeye-Security Ins Co, 442 Mich 520, 524-525; 502 NW2d 310 (1993) (“PIP benefits are mandated by statute under *814 the no-fault act.”). See also Husted v Auto-Owners Ins Co, 459 Mich 500, 513; 591 NW2d 642 (1999) (explaining that the compulsory nature of statutory PIP benefits was meant to guarantee PIP coverage to accident victims in exchange for limitations on the injured person’s ability to file a tort claim); Shavers v Attorney General, 402 Mich 554, 578-579; 267 NW2d 72 (1978) (explaining that the no-fault act “was offered as an innovative social and legal response to the long payment delays” that existed in Michigan and was meant to assure “adequate, and prompt reparation for certain economic losses” through a system of compulsory insurance). As Titan itself states, “when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute.” Titan, 491 Mich at 554. The plain language of the no-fault act provides no exceptions to, or limitations on, its mandate that an insurance carrier cover certain statutorily identified no-fault PIP benefits. Cf., id. (“On the other hand, when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute.”).
Like the panel in State Farm, I conclude that the difference between the benefits at issue in this case and the contractual benefits at issue in Titan is significant. Simply put, Titan did not address benefits that were required by statute; the insurer in that case expressly acknowledged liability for statutory residual liability amounts. To conclude that our Supreme Court’s ruling as to purely contractual, excess liability benefits should apply and overrule approximately 30 years of this Court’s precedent with regard to statutory PIP benefits is a leap I am not prepared to make. That is, I am disinclined to extend Titan and its reasoning to the innocent-third-party rule as that rule applies to *815 statutorily mandated PIP benefits. I see no support for doing so in the plain language of the no-fault act. Similarly, I conclude that the innocent-third-party rule is not inconsistent with the Supreme Court’s decision in Titan. Accordingly, I would find that we are bound to follow this Court’s precedent applying the innocent-third-party rule to PIP benefits. See MCR 7.215(J)(1); Charles A Murray Trust v Futrell, 303 Mich App 28, 49; 840 NW2d 775 (2013) (noting that this Court is bound to follow a prior published Court of Appeals decision issued on or after November 1,1990, that has not been reversed or modified by our Supreme Court or a special panel of this Court).
Nonetheless, this conclusion warrants the discussion of two matters. First, the justifications posed for the innocent-third-party rule have been inconsistent over time, and in some cases those justifications were premised on incorrect legal principles.[24] Yet, the innocent-third-party rule has been consistently applied by this Court for over 30 years, and there is an absence of published authority criticizing the rule. Thus, the rule remains good law, and this Court is bound to follow it. MCR 7.215(J)(1). And although not serving as a basis for my decision, I would note that the innocent-third-party rule serves the purposes of the no-fault act. One of the chief purposes of the no-fault act, as has been consistently identified by our appellate Courts, is to ensure prompt and adequate payment for *816 the types of injuries and losses encompassed under the category of PIP benefits. See, e.g., Shavers, 402 Mich at 578-579. Allowing retroactive rescission of a policy in a manner that removes coverage from an innocent individual who would ordinarily be covered under the policy thwarts the mandatory nature of these benefits and the purposes of the no-fault act.
Second, it could be argued that portions of the Titan opinion appear to undermine the innocent-third-party rule: notably, the portions of the opinion concluding that the remedy of rescission can only be limited by statute could be said to call the innocent-third-party rule into question. However, as noted earlier in this opinion, the instant case involves an entirely different type of benefits than was at issue in Titan. That is, the instant matter involves mandatory PIP benefits, while Titan involved voluntary liability coverage above the statutorily required minimum. And significantly, Titan expressly did not address mandatory benefits, because the insurer in that case acknowledged liability for certain statutory amounts. Further, and contrary to the majority opinion’s suggestions, Titan contained no discussion about the innocent-third-party rule and instead addressed a rule arising from this Court’s jurisprudence—Kurylowicz—that was directly contrary to a published Supreme Court decision regarding the easily-ascertainable-fraud rule. Given these significant differences between this case and Titan, I am not inclined to stretch Titan's holding to fit a scenario that was simply not addressed or contemplated by the Court in Titan. Accordingly, as did the panel in State Farm, unpub op at 9-10, I conclude that Titan is inapplicable to the innocent- third-party rule in the context of statutorily required no-fault PIP benefits.
*817 In declining to conclude that Titan affects the validity of the innocent-third-party rule in the context of this case, I also note that some of the concerns that were present in Titan are not present in the instant case. In Titan, 491 Mich at 569, the Court expressed concern that the easily-ascertainable-fraud rule “reduces disincentives for insurance fraud, and transfers legal responsibility from parties that have acted fraudulently to parties that have not.” The Court reasoned that the insured, not the insurer, should bear the burden of his or her fraud by being on the hook financially for his or her third-party tort liability above the statutorily required minimum. Id. But first-party PIP benefits do not “indemnify an insured despite fraud in obtaining the insurance policy.” See id. The no-fault system was created to eliminate the at-fault driver’s legal responsibility for medical expenses and certain wage loss and loss of service expenses, and in doing so, it also took away the injured third party’s right to sue for such expenses. Instead, the no-fault system baked into all insurance contracts mandatory coverage for these expenses. Forcing an innocent third party to seek recovery for his or her PIP benefits from the assigned claims facility does nothing to “transfer responsibility” away from those who have acted fraudulently. Moreover, as our Supreme Court has recognized, “an insured often has no control over the conduct of others,” and it would be untenable to require an insured to undertake to prevent others from engaging in fraud. Morgan, 411 Mich at 277. If we were to accept the invitation to extend the rule from Titan addressing voluntary third-party liability excess contractual coverage and conclude that the innocent-third-party rule has been eliminated with respect to first-party statutory PIP benefits, we would essentially force passengers (who do not have a policy of their *818 own), including children, to either investigate whether the car owner’s insurance policy was obtained by fraud before getting into the car or risk being thrown into a firestorm investigation after an accident to obtain that same information in time to make a claim to the right entity. And how would an innocent third party even go about investigating whether the policy procurer obtained the policy through fraud? That person would already have much on his or her mind following an accident, not the least of which is attempting to recover from his or her injuries. Put simply, Titan affects an insured’s right to receive the protection of voluntary, excess liability coverage with respect to third-party tort claims. Its ruling and rationale do not translate to first-party PIP benefits; to do so would wreak havoc on the no-fault system and would surely lead to every injured person filing a claim with the assigned claims plan, “just in case,” in addition to filing a claim with the insurance company whose policy was in effect and covered him or her at the time of the accident. I decline to extend the rationale in Titan to the uniquely different setting of statutorily required benefits and by doing so turn the no-fault system, as we have known it over the past 30 years, entirely on its head.
In addition, I note that in Titan, 491 Mich at 557, the Court rejected the easily-ascertainable-fraud rule in part because the various doctrines of fraud in Michigan “do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud.” In short, the easily-ascertainable-fraud rule had no place in the common law of fraud, and thus it could not bar rescission of an insurance policy. This type of problem is not present in the instant case, as the innocent-third-party rule does *819 not impute any additional requirements on an insurer who pleads fraud in the procurement of a policy.
Moreover, turning to the remedy of rescission, it has generally been viewed as an equitable remedy. Madugula v Taub, 496 Mich 685, 712; 853 NW2d 75 (2014). It is not found in the plain language of the no-fault act, yet the Supreme Court deemed it appropriate to apply in the context of voluntary insurance coverage, which is rooted in contract rights. Similarly, the innocent-third-party rule is an equitable remedy that is not found in the plain language of the no-fault act; like rescission, it too should be deemed appropriate to apply in the proper, equitable context. It is well established that the equitable remedy of rescission is not granted as a matter of right and will not be granted when it would accomplish an inequitable result. See, e.g., Schnitz v Grand River Avenue Dev Co, 271 Mich 253, 257; 259 NW 900 (1935); Johnson v QFD, Inc, 292 Mich App 359, 375; 807 NW2d 719 (2011); McMullen v Joldersma, 174 Mich App 207, 219; 435 NW2d 428 (1988). Thus, the remedy of rescission carries with it the idea that the result achieved is to be an equitable one. In other words, there is room within the concept of rescission for balancing the equities, which ostensibly extends to considering the fact that an innocent third party is involved and mandatory PIP benefits are at issue. I am not convinced that it is equitable in this case to allow an insurer to avoid paying statutorily mandated PIP benefits when the innocent, injured third party, absent another’s fraud, would have been entitled to coverage under the policy. See Morgan, 411 Mich at 276-277. This is especially true when the no-fault act itself discusses mandatory benefits with no mention of limitations on or exceptions to that mandatory coverage.
*820 Furthermore, I am not convinced that it is equitable to require the innocent third party otherwise covered by a policy to seek PIP benefits through the assigned claims plan in the event the insurance carrier claims fraud by the procurer and seeks rescission, as Sentinel contends should occur in this case. As Sentinel impliedly concedes in its briefing, the payment of benefits through the assigned claims plan might be unavailable for certain innocent third parties. And I note that statutory deadlines for giving notice of claimed PIP benefits could prevent an innocent third party, through no fault of his or her own, from receiving mandatory PIP benefits. Notably, a person claiming benefits through the assigned claims plan “shall notify” the Michigan Automobile Insurance Placement Facility (MAIPF) of his or her claim within one year. See MCL 500.3174;[25] MCL 500.3145(1).[26] See also Bronson Meth *821 odist Hosp v Allstate Ins Co, 286 Mich App 219, 225-226; 779 NW2d 304 (2009) (examining MCL 500.3145(1) and MCL 500.3174). I pose the following question: what happens when an innocent third party-tries to obtain PIP benefits through the insurer listed on the policy, only to have that insurer subsequently rescind the policy because of fraud in which the innocent third party did not participate, and the innocent third party then misses the one-year deadline for notifying the MAIPF? At least one panel of this Court has held that unless notice is given to the MAIPF within one year of the accident, the claim is barred, even when the injured person first sought benefits from the insurer he or she thought was the correct insurer. See Visner v Harris, unpublished opinion per curiam of the Court of Appeals, issued December 6, 2012 (Docket Nos. 307506 and 307507), pp 3-4.[27] This bolsters the position that permitting the remedy of rescission of an insurance policy under which PIP benefits payable to innocent third parties are sought has the potential to work an inequitable result. More *822 over, allowing insurance companies to rescind their contracts with respect to PIP benefits owed to innocent third parties could encourage gamesmanship and delay tactics on the part of an insurer; insurance companies are assigned claims by the MAIPF, and waiting to rescind an insurance policy until after that claim deadline passes means fewer claims will be assigned by the MAIPF. This also runs afoul of the no-fault act’s purpose of ensuring prompt and adequate payment for the types of injuries and losses encompassed under the category of PIP benefits. Shavers, 402 Mich at 578-579. Put simply, I do not agree that the equitable remedy of rescission trumps the equitable remedy of the innocent-third-party rule such that it is appropriate to apply rescission to first-party statutorily mandated PIP benefits, and I decline to extend Titan in that fashion.
The majority opinion indicates that it “decline [s] the invitation to legislate into existence an innocent-third-party rule that, thus far, the Legislature has chosen not to adopt.” I first note that the equitable remedy of the innocent-third-party rule has barred claims for the equitable remedy of rescission with respect to PIP benefits and innocent third parties for more than 30 years, yet the Legislature has felt no need to tweak the no-fault act to set this Court straight. I also note that the Legislature has never adopted the equitable remedy of rescission when it comes to the no-fault act and statutorily entitled PIP benefits. Rather, it expressly states that no-fault PIP benefits are mandatory. That should rule the day when it comes to statutorily mandated PIP benefits.
VI. CONCLUSION
The differences that exist between this case and Titan are significant. For the reasons stated in this *823 opinion, I would conclude that Titan does not abrogate the innocent-third-party rule with respect to statutory, first-party PIP benefits, and I would not cast aside 30 years of this Court’s precedent on the matter.
Accordingly, I would affirm the trial court’s ruling to the extent it held that the innocent-third-party rule applied. However, I would hold that the trial court erred by concluding that plaintiff, as an innocent third party, could only recover PIP benefits up to the amount mandated by MCL 257.520. As discussed, that limitation is not applicable to this case.

 This was the precise situation in Titan, 491 Mich at 552 n 2, as the insurer expressly acknowledged its liability for mandatory coverage and only sought to rescind the policy as to excess or optional liability coverage.

 MCL 257.520(f)(1) does not require innocence.

 The panel in Anderson even went so far as to clarify that the easily-ascertainable-fraud rule applied only in situations where fraud was asserted as a means for avoiding optional liability coverage. Anderson, 206 Mich App at 219 (“Despite the holdings in Ohio Farmers [Ins Co v Mich Mut Ins Co, 179 Mich App 355, 358, 364-365; 445 NW2d 228 (1989)] and Katinsky [v Auto Club Ins Ass’n, 201 Mich App 167; 505 NW2d 895 (1993)], we do not go so far as to say that a validly imposed defense of fraud will absolutely void any optional excess insurance coverage in all cases. To the contrary, when fraud is used as a defense in situations such as these, the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into.”).

 In Wilson, a case that involved PIP benefits, the insurer sought to reform the noncoordinated policy, on the basis of fraud, into a policy that was coordinated with the insured’s health insurance, thereby relieving the insurer of the obligation to pay duplicative medical benefits to the insured. Wilson, 231 Mich App at 331-332. Concluding that noncoordi-nated coverage was optional under the no-fault act, the panel determined that the innocent-third-party rule did not preclude the reformation sought by the insurer. Id. at 332-333. And because the fraud at issue in that case was not easily ascertainable, the panel ruled that the insurer could reform the contract in the manner it sought. Id. at 333-334.

 This distinction is discussed in more detail later in this opinion.

 Ohio Farmers, a somewhat curious decision that this Court later backed away from in Anderson, 206 Mich App at 219, cited Kurylowicz, but only for its “policy considerations.” See Ohio Farmers, 179 Mich App at 363. Thus, as the majority and concurring opinions correctly note, Ohio Farmers does not appear to implicate the easily-ascertainable-fraud portion of the Kurylowicz decision, despite what our Supreme Court believed to be the case in Titan. See Titan, 491 Mich at 563-564.

 This is not to say, however, that there are no reasonable arguments as to whether portions of the Titan decision cast doubt on the innocent-third-party rule. Those arguments are discussed later in this opinion.

 Although not expressly stated in the Kurylowicz opinion, it is apparent that the liability coverage was optional liability coverage. Indeed, the policy at issue in Kurylowicz was issued before enactment of the no-fault act, see Kurylowicz, 67 Mich App at 573, and at that time, “motorists could choose whether or not to carry liability insurance,” Coburn v Fox, 425 Mich 300, 308; 389 NW2d 424 (1986).

 The refusal to impose on insurers the burden of investigating representations by the insured was the premise of the holding in Keys:
Moreover, if inquiry is to be demanded, is it enough to stop with the traffic court? Might not the accident suggest physical or psychiatric defects? Should investigations not also be made of the past hospitalizations of the insured? Where will we say this may stop within the existing economic framework? It is doubtful whether one who deliberately sets out to swindle an insurance company can be prevented from so doing by any such requirement, and it is even more doubtful that there is enough of this practice to warrant the placing upon the insurance business of a requirement so onerous. [Keys, 358 Mich at 84.]

 In fact, the panel, recognizing that the cause of action in that case accrued before the enactment of the no-fault act, expressly stated that because the cause of action did not concern the no-fault act, “our holding in this case cannot be precedent for actions arising after the effective date of no-fault. . ..” Kurylowicz, 67 Mich App at 573.

 Despite the Supreme Court’s criticism in Titan about Kurylowicz’s policy arguments—discussed in more detail later in this opinion—I would be remiss not to note that in Coburn, 425 Mich at 310 n 3, our Supreme Court cited with approval this very same policy rationale from Kurylowicz.

 Like other cases applying the innocent-third-party rule, Roberts was a case involving an insured’s application for mandatory PIP benefits, not optional liability coverage. See id. at 346-347.

 In addition, we note that Michigan is not alone in applying the innocent-third-party rule in the context of automobile insurance. See 7 Am Jur 2d, Automobile Insurance, § 61, pp 566-568 (summarizing the law from various jurisdictions).

 As will be explained in more detail later in this opinion, MCL 257.520(f)(1) prohibits an insurer from avoiding liability up to certain statutory minimums for liability coverage, and pursuant to Titan, it is not applicable to the PIP benefits at issue in this case.

 Titan expressly acknowledged its responsibility for the minimum liability coverage limits-—-$20,000 per person/$40,000 per occurrence— required under the financial responsibility act. Titan, 491 Mich at 552 n 2. For that reason, statutorily mandated benefits were not at issue in Titan.

 The alleged fraud was in regard to whether Hyten possessed a valid driver’s license at the time of the application for insurance.

 As recognized by the Titan Court, MCL 257.520(f)(1)—which is part of the financial responsibility act—does not apply to PIP benefits under the no-fault act. Id. at 559-560. Of note, the financial responsibility act was enacted 24 years before the no-fault act. Hence, our Supreme Court in Titan discerned the Legislature’s intended scope and applicability of MCL 257.520(f)(1) with respect to an act that did not exist when MCL 257.520(f)(1) was enacted.

 The reasoning employed by the Court when it rejected the easily-ascertainable-fraud rule forms the basis of Sentinel’s argument that the innocent-third-party rule did not survive Titan.

 MCL 500.3220 provides:
Subject to the following provisions no insurer licensed to write automobile liability coverage, after a policy has been in effect 55 days or if the policy is a renewal, effective immediately, shall cancel a policy of automobile liability insurance except for any 1 or more of the following reasons:
*808 (a) That during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer.
(b) That the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator’s license suspended during the policy period and the revocation or suspension has become final.

 See Frost v Citizens Ins Co, 497 Mich 980 (2015); State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth, 498 Mich 870 (2015).

 Citizens intervened in Frost’s lawsuit against Progressive in which Frost sought to obtain reimbursement for losses incurred when her car was destroyed.

 As he acknowledges in his concurring opinion in this case, Judge Boonstra was on the panel in State Farm. As my dissenting opinion makes clear, I think he and his panel got it right in State Farm.

 QBE Insurance Corporation is the insurer that sought to rescind its policy.

 For instance, Wilson, 231 Mich App at 331, justified the innocent-third-party rule in a case involving PIP benefits by citing MCL 257.520(f) of the financial responsibility act. MCL 257.520(f) does not apply to PIP benefits under the no-fault act. See Titan, 491 Mich at 559-560. However, while MCL 257.520(f) does not apply, when the mandatory nature of PIP benefits is considered, it is not that far of a stretch to see the rationale in analogizing mandatory PIP benefits to mandatory minimum levels of liability coverage.

 MCL 500.3174, which refers to timing deadlines for PIP benefits (MCL 500.3145(1)), provides:
A person claiming through the assigned claims plan shall notify the Michigan automobile insurance placement facility of his or her claim within the time that would have been allowed for filing an action for personal protection insurance benefits if identifiable coverage applicable to the claim had been in effect. The Michigan automobile insurance placement facility shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned. An action by the claimant shall not be commenced more than 30 days after receipt of notice of the assignment or the last date on which the action could have been commenced against an insurer of identifiable coverage applicable to the claim, whichever is later.

 MCL 500.3145(1) sets forth certain deadlines for commencing an action for the recovery of PIP benefits as follows:
An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the *821 accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor’s loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

 Although unpublished decisions such as Visner Eire not binding precedent, they may be viewed as instructive or persuasive authority. Paris Meadows, LLC v Kentwood, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).